United States District Court
Northern District of California

1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

EUREKA DIVISION

7
8

ANITA D. S.,[1]

9

Plaintiff,

10

v.

11

ANDREW SAUL,

12

Defendant.

Case No.  19-cv-04480-RMI

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 20

13
14
15
16
17
18
19
20
21

Plaintiff, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5 & 9), and both parties have moved for summary judgment (dkts. 15 & 20). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

22

**LEGAL STANDARDS**

23
24
25
26

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

27
28

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

"substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### PROCEDURAL HISTORY

On July 1, 2016, Plaintiff filed an application for disability insurance benefits, alleging an onset date of May 6, 2016. *See* Administrative Record "*AR*" at 16.[2] As set forth in detail below, the ALJ found Plaintiff not disabled and denied the application on November 21, 2018. *Id*. at 16-28. The Appeals Council denied Plaintiff's request for review on May 29, 2019. *See id*. at 1-4. Thereafter, on August 1, 2019, Plaintiff sought review in this court (dkt. 1), contending, *inter alia*, that the ALJ erred by failing to consider the effects of Plaintiff's depression and anxiety (which the ALJ had found to be non-severe at Step Two) at Step Four and Step Five. *See* Pl.'s Mot. (dkt. 15) at 13-15. Defendant contends that the ALJ properly evaluated the evidence in question, but that if the court disagrees and finds error in this regard, the proper remedy would be a remand for further proceedings. *See* Def.'s Mot. (dkt. 20) at 3-10.

### SUMMARY OF THE RELEVANT EVIDENCE

In reviewing the ALJ's decision in this case to determine whether it was, in its entirety, supported by substantial evidence, the court has concluded (for the reasons stated below) that the ALJ's determination at Step Two (to the effect that Plaintiff's anxiety and depression were non-

---

[2] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #12. *See* (dkts. 12-1 through 12-22).

United States District Court
Northern District of California

United States District Court
Northern District of California

severe) was based on legal error and a failure on the ALJ's part to properly develop the record; thus, the ALJ's determination at Step Two was not supported by substantial evidence. Accordingly, the following is a statement of the evidence relevant to the ALJ's erroneous evaluation of Plaintiff's anxiety and depression at Step Two.[3]

*Medical Evidence of Plaintiff's Anxiety and Depression*

The record in this case is mostly focused on the multitude of Plaintiff's physical illnesses and impairments. However, even a cursory review of the 1400-page record in this case reveals the undeniable fact that Plaintiff suffers from an anxiety disorder and a depression disorder, and that the two conditions combine to cause Plaintiff to suffer from insomnia and near-constant fatigue. In fact, there is even ample evidence that Plaintiff's anxiety disorder exacerbates her gastrointestinal issues. For example, on a number of occasions, her physicians have noted that Plaintiff's anxiety disorder predates her adrenal problems and that her anxiety symptoms are "not completely responsive to adrenal therapy." *See AR* at 663, 705, 714, 848. On numerous other occasions, Plaintiff has been diagnosed with major depression, diagnoses that are attended with the notation that her depression is "possibly reactive to current pain condition as well as endocrine problems," coupled with her "intolerance of multiple antidepressants in the past." *See e.g., id.* at 855, 847. The

---

[3] It should be noted here that Plaintiff has only asserted that the ALJ erred in failing to consider the "non-severe" conditions of anxiety and depression at Steps Four and Five, however, the court will, *sua sponte,* raise the issue of the incorrectness of the non-severity determination itself. In this regard, the court is not precluded from raising such an issue *sua sponte;* indeed, this court has an independent duty to determine whether the ALJ's findings (in every regard) are supported by substantial evidence. This is so because an appeal from the denial of Social Security benefits is quite unlike ordinary civil litigation as the underlying claims process before the ALJ is not adversarial. *See Sims v. Apfel,* 530 U.S. 103, 110 (2000). Although it is true that claimants carry the burden of demonstrating that they qualify for benefits, the state of the law is not such as to leave them entirely to their own devices; consequently, lapses of pleading or procedure cannot be relied upon to withhold benefits from a claimant who may otherwise be entitled to them. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 n.3 (9th Cir. 1999). Thus, when such a case is before this court, while a plaintiff must make her own arguments for remand, that does not relieve this court of its independent duty to effect a proper review of the facts and to render a thorough and independent determination as to whether the ALJ's findings are supported by substantial evidence. *Stone v. Heckler,* 761 F.2d 530, 532 (9th Cir. 1985). In this context, it cannot be reasonably contended that the failure by a Plaintiff to raise an error is an acceptable reason for a court to actively ignore it. *See Ariz. State Dep't of Pub. Welfare v. Dep't of Health, Educ. & Welfare,* 449 F.2d 456, 472 (9th Cir. 1971); *Hess v. Sec'y of Health, Educ. & Welfare,* 497 F.2d 837, 840 (3d Cir. 1974); *see also Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). A significant number of courts faced with this issue have arrived at a similar conclusion. *See e.g., Farley v. Colvin,* 231 F. Supp. 3d 335, 339-41 (N.D. Cal. 2017) (collecting cases standing for the proposition that while a remand request is normally made by a party, there is no reason why a district court may not remand, *sua sponte,* for an error that was not raised).

1  record reflects that Plaintiff's physicians have consistently listed her depression, anxiety, and

2  insomnia as ongoing problems. *See id*. at 563, 602, 612, 653, 662, 681, 687, 704, 713, 751, 754,

3  817, 834, 839, 846, 851, 854. Even a casual perusal of the record reveals that treating physicians

4  have – on at least eighty occasions – prescribed Plaintiff anti-anxiety medications.[4] Thus, the

5  medical evidence of record leaves no room for doubt as to the existence of Plaintiff's anxiety and

6  depression.

7         As to the effects of those conditions, a patient health questionnaire submitted to treating

8  physicians in August of 2016 reveals that Plaintiff has experienced nearly constant difficulties in

9  concentrating even on such things as reading a newspaper or watching television, and that she also

10  constantly experienced fatigue and low-energy levels. *Id*. at 842. During the same period, Plaintiff

11  reported that, more often than not, she experienced a significant diminution in interest or pleasure

12  relating to doing anything, while also noting feelings of depression, worthlessness and

13  hopelessness. *Id*. As to the interrelated nature of Plaintiff's anxiety and her insomnia, in July of

14  2015, her doctors noted that her "[s]leep is not good – she will have increased mental activity and

15  sometimes needs to take Xanax [an anti-anxiety medication] to sleep." *Id*. at 599. Regarding the

16  interrelation between her anxiety disorder and her gastrointestinal conditions, her doctors have

17  noted, while "she has always had [] bad gut[s]," that "[a]ll of her GI symptoms are very much

18  exacerbated by stress, which has been to the extreme at work . . . [and] [t]he patient states the fact

19  [that] she has never experienced such stress that she is currently enduring at any other time in her

20  life." *Id*. at 599, 641.

21  *Testimonial Evidence*

22         Plaintiff has submitted two function reports which are, unfortunately, largely illegible. *See*

23  *id*. at 244-271. However, Plaintiff's husband has submitted a third-party function report, dated

24  August 12, 2016, which is mostly legible. *See id*. at 302-09. Plaintiff's husband described her

25

26  _____

27  [4] *See e.g., id*. at 308, 309, 355, 359, 367, 385, 386, 388, 390, 391, 392, 396, 398, 402, 403, 405, 407, 408, 410, 411, 416, 417, 420, 464, 472, 478, 498, 513, 514, 516, 518, 520, 533, 536, 541, 560, 565, 599, 600, 602, 611, 659, 660, 671, 679, 682, 686, 698, 702, 711, 732, 735, 737, 741,

28  744, 749, 753, 757, 761, 764, 767, 769, 772, 774, 777, 779, 781, 783, 815, 819, 828, 832, 838, 844, 852, 976, 978, 980, 983, 985.

United States District Court
Northern District of California

4

anxiety and depression symptoms as including: constant fatigue and exhaustion; insomnia, restlessness; difficulty remembering things; and social isolation. *Id.* at 302-07. Plaintiff's husband then added that while she was formerly able to handle stress quite well, such is no longer the case at all and that she is now much more susceptible to stress and frustration than ever before. *Id.* at 308. He also noted that Plaintiff's confidence (in all respects) has now diminished in that she is now afraid to do anything. *Id.* Complaining about Plaintiff's anhedonia, the fact that "she rarely has a good day," and the fact that she "does not leave the house," her husband noted that he "could now see pain and distress in her eyes [and that he could now] see her frustration more and more." *Id.* at 309.

On August 28, 2018, the ALJ conducted a hearing on Plaintiff's claim. *Id.* at 37-74. In addition to her various physical impairments, her gastrointestinal conditions, and her pituitary and adrenal gland disorders, Plaintiff also testified about her chronic fatigue, stress, her difficulties concentrating, and the fact that she has "a lot of anxiety." *Id.* at 50-54. Plaintiff added that she takes Xanax to quell her anxiety such as to help her sleep at night, or when her anxiety is so exaggerated that she feels like she is experiencing a panic attack. *Id.* at 55. When asked to describe her experience with anxiety, Plaintiff testified that "[i]t's an extreme anxiety. I mean – anxiety's kind of a constant state for me. But sometimes, it escalates into what feels like a panic attack." *Id.* at 56. When asked by the ALJ whether depression affects her ability to work, Plaintiff responded to the following effect: "[d]epression and anxiety both . . . I think the anxiety probably is worse than the depression as far as working because there's so much stress in my line of work . . . I tried a lot of different depression medication . . . A lot of them make me feel really nervous and sleepy [and] didn't improve [my] symptoms [enough] to make it worth the side-effects." *Id.* at 62-63. Following Plaintiff's testimony, the ALJ did not ask the vocational expert ("VE") any questions that appeared to account for Plaintiff's anxiety or her depression. *See id.* at 67-75.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or

United States District Court
Northern District of California

1    more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[5] The ALJ must consider all evidence in

2    the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

3    step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

4    416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

5    the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

6         Here, the ALJ set forth the applicable law under the required five-step sequential

7    evaluation process. *AR* at 16-17. At Step One, the claimant bears the burden of showing she has

8    not been engaged in "substantial gainful activity" since the alleged date on which the claimant

9    became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to

10   be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that

11   Plaintiff meets the insured status requirements of the Social Security Act through December 31,

12   2021, and that she had not engaged in substantial gainful activity since May 6, 2016. *AR* at 18. At

13   Step Two, the claimant bears the burden of showing that she has a medically severe impairment or

14   combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe

15   if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than

16   a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686

17   (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). At Step Two, the ALJ found that Plaintiff

18   suffered from the following severe impairments: degenerative disc disease of the lumbar spine

19   (status, port-surgery); neuroma; and adrenal insufficiency. *Id*. at 19-20. However, the ALJ

20   determined that Plaintiff's anxiety and depression disorders were non-severe because of the

21   finding that they do not cause more than minimal functional limitations. *Id*. at 19-21.

22        At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

23   appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

24   burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant

25   is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful,

26

27   ───────────────

28   [5] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II)
     are virtually identical though found in different sections of the CFR. For the sake of convenience, the court
     will generally cite to the SSI regulations herein unless noted otherwise.

United States District Court
Northern District of California

the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. *AR* at 22. Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work with the following exceptions and limitations: Plaintiff cannot climb ladders, ropes, and scaffolds; Plaintiff can occasionally perform postural maneuvers such as stooping, crouching, and crawling; she should be limited to frequent handling, fingering, and reaching with both arms; and, Plaintiff must avoid even moderate exposure to hazards such as unprotected heights and moving machinery. *Id*. at 23-26.

At Step Four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a medical clinic manager or director of medical records. *Id*. at 26. Next, at Step Five, because of the finding that Plaintiff has acquired a number of skills in the context of her past employment (e.g., computer skills, analytical thinking, active listening, and knowledge of policies, procedures, and compliance regulations), and based on the VE's testimony, the ALJ found that Plaintiff would be able to perform the requirements of a director of outpatient services (as set forth in the Dictionary of Occupational Titles). *Id*. at 27-28. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 6, 2016. *Id*. at 28.

## DISCUSSION

Defendant incorrectly argues that "[t]he ALJ noted that that the primary evidence of Plaintiff's alleged mental impairment came from her own testimony at the hearing and a note reflecting her allegations of depression . . . [and that] she effectively asks this Court to rely on her subjective symptom testimony contrary to the ALJ's finding that this testimony was not reliable." *See* Def.'s Mot. (dkt. 20) at 4. On this basis, Defendant incorrectly submits that "[s]ubstantial evidence supports the ALJ's finding at step two that Plaintiff did not have a severe mental impairment, the ALJ's RFC finding that did not provide for mental limitations, and the ALJ's vocational findings based thereon." *Id*. at 5. For the reasons discussed below, the court disagrees with each of these contentions and finds that the ALJ's Step Two findings as to Plaintiff's anxiety and depression were not based on substantial evidence, and that this error – coupled with the

United States District Court
Northern District of California

7

ALJ's failure to properly develop the record in this regard – infected the entirety of the remainder of the sequential evaluation process.

The evaluation of claimed impairments at Step Two of the sequential evaluation process is a *de minimis* test intended to weed out the most minor of impairments, as well as functioning as a screening device to dispose of patently groundless claims. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Thus, a finding of non-severity at Step Two must be "clearly established by medical evidence" (*see id*.), and if a claimant meets her evidentiary burden under Step Two's *de minimis* standard, an ALJ "must find that the impairment is 'severe' and move to the next step" in the five-step evaluation process. *See Edlund*, 253 F.3d at 1160. For these reasons, "[a]mple authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) (citing *Yuckert*, 482 U.S. at 153; *Webb*, 433 F.3d at 686; and, *Smolen*, 80 F.3d at 1290).

First, as described in detail above, and contrary to Defendant's suggestion, "the primary evidence of Plaintiff's mental impairment[s]" did *not* come from her own testimony. Instead, Plaintiff's physicians have repeatedly noted that her anxiety disorder predates her adrenal problems, and that her anxiety symptoms have been resistant and non-responsive to adrenal therapy. *See AR* at 663, 705, 714, 848. Plaintiff's physicians have also repeatedly diagnosed her with major depression while noting that her depression is "possibly reactive to [her] current pain condition as well as [her] endocrine problems," while also repeatedly noting the fact of Plaintiff's "intolerance of multiple antidepressants in the past." *See e.g., id*. at 855, 847. Accordingly, "the primary evidence" of Plaintiff's mental impairments is manifest in the fact that her treating physicians have consistently listed her depression, anxiety, and insomnia as persistent problems. *See id*. at 563, 602, 612, 653, 662, 681, 687, 704, 713, 751, 754, 817, 834, 839, 846, 851, 854. For this reason, Plaintiff has been prescribed anti-anxiety medication on a constant basis for a substantial number of years. *See* fn. 4 *supra*. It cannot, therefore, be reasonably contended that Plaintiff's anxiety and depression disorders are "patently groundless claims" that might have been

8

United States District Court
Northern District of California

1    subject to Step Two screening and labeled as non-severe, because both conditions have been

2    clearly established by medical evidence. Neither can the ALJ's error in this regard be considered

3    harmless for two reasons: first, the error is not harmless because the ALJ failed to consider these

4    conditions at all at Step Three or beyond (*see id*. at 22-28); and, second, the error is non-harmless

5    because the ALJ failed to properly develop the record regarding the precise parameters of the

6    limiting effects of these conditions, both individually and in combination with Plaintiff's other

7    impairments (without which, it cannot be honestly suggested that the remainder of the sequential

8    evaluation process rested on anything other than an illusory foundation). Instead, the ALJ seems to

9    have usurped the function of a psychologist by somehow determining that Plaintiff's depression

10   and anxiety are non-severe because she "responded coherently to questioning at the hearing,"

11   because she "reported [to someone in the past] that she can drive a car," and because "[n]o treating

12   or examining source noted any deficiencies in hygiene or attire." *Id*. at 20-21. Pursuant to the

13   teachings set forth in the above-mentioned cases describing the legal regime under Step Two, the

14   flaws in the ALJ's reasoning are self-evident.

15         Further, it is well established that "[t]he ALJ in a social security case has an independent

16   'duty to fully and fairly develop the record and to assure that the claimant's interests are

17   considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (*quoting Smolen*, 80 F.3d

18   1273, 1288 (9th Cir. 1996)). Because administrative proceedings of this sort are inquisitorial in

19   nature, the ALJ is not permitted to simply sit back and take the role of a mere umpire; instead, the

20   ALJ must scrupulously and conscientiously probe into the matter and actively explore for any and

21   all relevant facts. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Higbee v.

22   Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). If there is so much as an ambiguity in the evidence,

23   or if the ALJ – or a reviewing court – finds that the record is inadequate for proper evaluation of

24   the evidence, such a finding likewise triggers the ALJ's duty to conduct an appropriate inquiry.

25   *See Tonapetyan*, 242 F.3d at 1151 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

26   Additionally, in all cases where a claimant may be mentally ill and unable to adequately protect

27   her own interests (regardless of the claimant's representational status), the ALJ's duty to develop

28   the record is heightened. *Tonapetyan* at 1150 (citing *Higbee*, 975 F.2d at 562); *see also DeLorme*

9

United States District Court
Northern District of California

1    *v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1990) ("In cases of mental impairments, this duty [to

2    develop the record] is especially important."); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)

3    (a claimant need only "raise a suspicion" about his or her impairment in order to trigger the ALJ's

4    duty to develop the record). In this case, rather than undertaking this duty to develop the record as

5    to the limitations caused by Plaintiff's depression and anxiety, the ALJ rejected Plaintiff's

6    testimony (as well as her husband's account) about the limiting effects of these conditions, while

7    simply ignoring the opinions rendered in this regard by her doctors. *See AR* at 599 (doctor's

8    opinion that Plaintiff's insomnia is rooted in her anxiety); *see also id*. at 599, 641 (doctor's

9    opinion that Plaintiff's gastrointestinal illnesses are exacerbated by her anxiety).

10      Thus, because Social Security proceedings are inquisitorial rather than adversarial, "[i]t is

11    the ALJ's duty to investigate the facts and develop the arguments both for and against granting

12    benefits." *Sims*, 530 U.S. at 110-11 (citing Dubin, *Torquemada Meets Kafka: The Misapplication*

13    *of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev.

14    1289, 1301-1305, 1325-1329 (1997)); *see also Richardson v. Perales*, 402 U.S. 389, 400-01

15    (1971) ("This, we think, is as it should be, for this administrative procedure, and these hearings,

16    should be understandable to the layman claimant, should not necessarily be stiff and comfortable

17    only for the trained attorney, and should be liberal and not strict in tone and operation. This is the

18    obvious intent of Congress so long as the procedures are fundamentally fair."). Accordingly, the

19    ALJ must take reasonable steps to ensure that the issues and questions raised by the medical

20    evidence are carefully and properly addressed, by an appropriate professional with the relevant

21    professional background, so that the disability determination may be fairly made on a sufficient

22    evidentiary record, whether favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161

23    F.3d 599, 602 (9th Cir. 1999); *see also Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to

24    know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an

25    appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions

26    to [him or her]."). In fact, when it is necessary to enable the ALJ (and by extension, a reviewing

27    court) to resolve a disability issue, the ALJ's duty to develop the record may require consulting a

28    medical expert or ordering a consultative examination. *See Tonapetyan*, 242 F.3d at 1150 (the ALJ

United States District Court
Northern District of California

1    may develop the record in several ways, including by subpoenaing the claimant's physicians,

2    submitting questions to the claimant's physicians, continuing the hearing, or keeping the record

3    open after the hearing to allow for supplementation of the record).

4         As mentioned above, rather than discharging the duty to "investigate the facts and develop

5    the arguments both for and against granting benefits," (*Sims*, 530 U.S. at 110-11), the ALJ

6    unceremoniously and unfairly short-circuited the inquiry into the limiting effects of Plaintiff's

7    mental impairments by concluding that the effects are minimal because Plaintiff "responded

8    coherently at the hearing" (*AR* at 20), because she had reported at some point in her past "that she

9    can drive a car" (*id.*), and because no one has observed "any deficiencies in [her] hygiene or

10   attire" (*id.* at 21). It goes without saying that an ALJ may not make medical findings herself. *See*

11   *e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *Filocomo v. Chater*, 944 F. Supp. 165,

12   170 (E.D.N.Y. 1996) (ALJ may not make medical findings in the absence of supporting medical

13   opinion); *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (An ALJ cannot make medical

14   findings); *Kemp v. Bowen*, 816 F.2d 1469, 1475 (10th Cir. 1987) (the ALJ may not make medical

15   findings "not supported by any medical evidence in the record, and thus [representing] the

16   personal medical opinion of the ALJ.").

17        On remand, the Commissioner is **ORDERED** to arrange for an independent and unbiased

18   consultative examination by a qualified clinical psychologist for the purpose of evaluating

19   Plaintiff's mental impairments and for the provision of an opinion regarding any functional

20   limitations rooted therein. Following that, the ALJ is **ORDERED** to thereafter reengage the

21   sequential evaluation process in accordance with the guidance and instructions provided herein

22   while taking care, in particular, to carefully evaluate the interrelation between Plaintiff's mental

23   impairments and her other impairments, especially her insomnia and her gastrointestinal issues.

24        The court declines to address Plaintiff's remaining issues not only because they can be

25   adequately addressed on remand, but also because the calculus underlying those issues will likely

26   change on remand given the holdings expressed herein. *See Hiler v. Astrue*, 687 F.3d 1208, 1212

27   (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to

28   reach [plaintiff's] alternative ground for remand."); *see also Gutierrez v. Comm'r of Soc. Sec.*, No.

18-cv-02348-RMI, 2019 U.S. Dist. LEXIS 165711, at *30-31 (N.D. Cal. Sep. 25, 2019); *Abdul-Ali v. Berryhill*, No. 18-cv-03615-RMI, 2019 U.S. Dist. LEXIS 138512, 2019 WL 3841995, at *7 (N.D. Cal. Aug. 15, 2019); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). On remand, the Commissioner is instructed to consider the other issues raised in Plaintiff's briefing and modify the ensuing ALJ opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017).

## CONCLUSION

Thus, for the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 15) is **GRANTED**, and Defendant's Cross-Motion (dkt. 20) is **DENIED**. The case is **REMANDED** for further proceedings pursuant to the instructions provided herein.

**IT IS SO ORDERED.**

Dated: March 17, 2021

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California

12